# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Christie E. Jones, | Civil No. 14-2980 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Officer Armando F. Abla-Reyes and Officer Jean Barber, in their individual and official capacities; | |
| Defendants. | |

_____

Zorislav R. Leyderman, Esq., The Law Office of Zorislav R. Leyderman, counsel for Plaintiff.

Adam M. Niblick, Esq., St. Paul City Attorney's Office, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendants Officer Armando F. Abla-Reyes ("Officer Abla-Reyes") and Officer Jean Barber ("Officer Barber") (Doc. No. 17). For the reasons set forth below, the Court grants in part and denies in part the motion.

## BACKGROUND

On October 9, 2013, Saint Paul Police Officers were dispatched on a report of an aggravated assault. (Doc. No. 20 ("Niblick Aff.") ¶ 5, Ex. B ("Abla-Reyes Dep."), Ex. 3 at STP0022; *id.* ¶ 6, Ex. C ("Barber Dep.") at 16-17.) Officer Abla-Reyes was the first to

respond, and while he was en route, dispatch advised that an individual on the scene was injured. (Abla-Reyes Dep. at 49; Barber Dep. at 14.) Specifically, dispatch advised that an individual had been stabbed by a female and was bleeding heavily and lying in the street. (Abla-Reyes Dep. at 49 & Ex. 3 at STP0022; Barber Dep. at 14.)

When Officer Abla-Reyes arrived, he located the bleeding victim, later identified as Kenneth Jordan ("Jordan"), and also observed a female, later identified as Plaintiff Christie E. Jones ("Jones"), standing over the victim. (Niblick Aff. ¶ 4, Ex. A ("Jones Dep.") at 29; Abla-Reyes Dep. at 49, 55.) At the time, Officer Abla-Reyes thought Jones was the complainant. (Abla-Reyes Dep. at 49, 55-56.) Jones testified that she came across Jordan standing in the middle of the road with a torn shirt and dripping with blood on her way home from work. (Jones Dep. at 13-14, 17-18, 20.) Jones, who has training as a paramedic, stopped to help Jordan. (*Id*. at 18, 21.)

As Jones attempted to assist Jordan, Officer Abla-Reyes approached Jordan and Jones. (Abla-Reyes Dep. at 50-52.) The scene was not yet secure. (*Id*. at 70.) Officer Abla-Reyes testified that he did not know the extent of Jordan's injuries, where on his body Jordan was injured, or the identity or location of the person who injured Jordan. (*Id*. at 50, 70.) Jones testified that she informed Officer Abla-Reyes that she used to be a paramedic, that the scene was secure, and that Jordan was injured. (Jones Dep. at 23-29.) Officer Abla-Reyes testified that he attempted to ask Jordan questions to get necessary information. (Abla-Reyes Dep. at 50, 69.) Officer Abla-Reyes further testified that

Jones interjected answers to the questions that were directed at Jordan. (Abla-Reyes Dep. at 51, 59.)

Officer Abla-Reyes proceeded past Jones and bent over Jordan to investigate his injuries. (Jones Dep. at 26; Abla-Reyes Dep. at 51.) Officer Abla-Reyes noticed blood on Jordan's shirt but could not determine where the blood was coming from. (Abla-Reyes Dep. at 50.) Officer Abla-Reyes reached down to inspect Jordan, and Jones reached out her right arm and extended it in front of Officer Abla-Reyes, either grabbing his hand, pushing it away, or impeding his ability to contact Jordan. (Jones Dep. at 28, 32; Abla-Reyes Dep. at 51-52 ("[Jones] reached in and grabbed my hand and pulled it back and said "Don't touch him. He's bleeding."; Barber Dep. at 18).) Jones testified that she intentionally stuck her arm out so that it would be in Officer Abla-Reyes's line of sight. (Jones Dep. at 33.) Jones claims that her intention was to alert Officer Abla-Reyes that Jordan had blood on him and to keep Officer Abla-Reyes from touching Jordan. (Jones Dep. at 33, 60.) Jones claims that Officer Abla-Reyes then "slammed" her in the chest, causing her to stumble backwards. (*Id*. at 28, 34, 35, 36.) Jones testified that she stated "watch out, he's covered in blood." (*Id*. at 28, 32.) Officer Abla-Reyes asserts that he told Jones to step back and leave several times and that he eventually used his left arm to create space between himself and Jones and to guide Jones away from the scene. (Abla-Reyes Dep. at 52, 63; *see also* Barber Dep. at 17, 20.)

At some point while Officer Abla-Reyes and Jones were interacting, Officer Barber and Officer Chad Dagenais arrived at the scene. (Jones Dep. at 33; Abla-Reyes

Dep. at 52, 57, 62; Barber Dep. at 16.) Officers Abla-Reyes and Barber testified that Jones was uncooperative and hostile. (Abla-Reyes Dep. at 61-64; Barber Dep. at 20-24.) Eventually, Jones was moved away from the scene while the officers tended to Jordan. Jones asserts that she walked approximately two houses down the street and, using her cell phone, began to videotape the officers as they interacted with Jordan. (Jones Dep. at 39-41; *see also* Abla-Reyes Dep. at 67; Niblick Aff. ¶ 8, Ex. E.) Jones asked to see a sergeant. (Abla-Reyes Dep. at 66; Jones Dep. at 35-39.)

Officer Abla-Reyes later approached Jones and asked for her name and birthdate. (Jones Dep. at 42, 43.) Officer Abla-Reyes intended to arrest Jones for obstructing legal process. (Abla-Reyes Dep. at 69-70.) Jones was detained, placed in handcuffs, and seated in the back seat of the squad car. (*Id*. at 75; Jones Dep. at 43-45.) Jones indicated that she could not sit in the back of the squad car because she had a medical boot on her leg. (Jones Dep. at 44.) Jones also told Officer Abla-Reyes that she was disabled, her insulin pump had been knocked loose, and she wanted an ambulance. (*Id*. at 44-45.) Office Abla-Reyes placed her in the back of the squad car in such a way that Jones' feet could remain outside of the vehicle. (Abla-Reyes Dep. at 78-79.)[1] Jones also asked Officer Abla-Reyes to remove the handcuffs, which were causing her discomfort. (Jones Dep. at 45.) Roughly fifteen minutes later, Officer Abla-Reyes removed the handcuffs,

---

[1]   Officer Abla-Reyes testified that under St. Paul Police Department policy, he was required to place Jones in handcuffs before placing her in the squad car. (Abla-Reyes Dep. at 75-76.)

and released Jones with a citation for obstruction of legal process. (*Id*. at 47.) Prior to being released, medical personnel checked Jones' condition. (Abla-Reyes Dep. at 80.)

Jones asserts four claims against Defendants: (1) First Amendment Retaliation against Officer Abla-Reyes (Count One); (2) Fourth Amendment excessive force against Officer Abla-Reyes (Count Two); (3) Fourth Amendment unreasonable seizure and false arrest against Officer Abla-Reyes (Count Three); and (4) Fourth Amendment unreasonable seizure, excessive force, and failure to protect against Officer Barber (Count Four).[2] (Doc. No. 1, Compl. ¶¶ 51-63.) Defendants move for summary judgment on all counts. The Court considers the motion below.

## DISCUSSION

**I.     Legal Standard**

    **A.     Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo*., 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

---

[2]     Count V and all claims against Officer Chad Dagenais and the City of St. Paul were previously dismissed. (Doc. No. 16.)

5

are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### B. Qualified Immunity

Defendants submit that they are entitled to qualified immunity. The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). To overcome the defense of qualified immunity, a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)

(citation omitted). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In determining whether the constitutional right was clearly established at the time of the conduct, the Court must ask whether the contours of the applicable law were "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

## II.    False Arrest/Unlawful Seizure

In Count Three, Jones alleges that Officer Abla-Reyes violated her right to remain free from unreasonable seizure under the Fourth Amendment when he detained her. In particular, Jones asserts that Officer Abla-Reyes had no probable cause to believe that she had committed a crime. Officer Abla-Reyes disputes this and claims that he did have probable cause to believe that Jones had committed the crime of obstructing legal process.

The Fourth Amendment prohibits unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). And it is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010). "Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014) (quotation omitted). But a police officer need

only have "arguable probable cause" to make the arrest in order to receive qualified immunity. *Id*. (citing *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Id*. (quotation omitted). Under Minnesota law, it is crime to "intentionally . . . obstruct[], resist[], or interfere[]with a peace officer while the officer is engaged in the performance of official duties." Minn. Stat. § 609.50, subd. (1)(2).

Defendants assert that Officer Abla-Reyes is entitled to qualified immunity on Jones' unlawful seizure claim because he had arguable probable cause to arrest Jones for obstruction of legal process because: (1) Jones interjected to answer questions directed at Jordan; and (2) Jones physically interfered with Officer Abla-Reyes by placing her arm in front of him when he was trying to reach Jordan. Officer Abla-Reyes also points out that during his interaction with Jones, the scene was not secure and he was not sure of the details of what led to Jordan's injury. Defendants assert that Jones' actions directly interfered with Officer Abla-Reyes' ability to inspect Jordan, determine the extent of Jordan's injuries, render first aid, and to investigate the situation.

Jones argues that genuine issues of material fact preclude summary judgment on this claim because she denies interfering with Officer Abla-Reyes' duties. Specifically, Jones asserts that she was attempting to examine Jordan when Officer Abla-Reyes approached and that she immediately explained that she used to work as a paramedic and relayed other details about the situation to Officer Abla-Reyes. Jones maintains that she

never verbally interfered with Officer Abla-Reyes' attempt to question Jordan. In addition, Jones asserts that she reached out her arm to alert Officer Abla-Reyes that Jordan's shirt was covered with blood, but maintains that she never made contact with him. In sum, Jones maintains that her actions were insufficient to establish even arguable probable cause to arrest her for obstruction of legal process.

In support, Jones relies on *State v. Krawsky*, 426 N.W.2d 875 (1988). In *Krawsky*, the Court considered a constitutional challenge to Minnesota Statute § 609.50 in the context of a criminal prosecution under the statute. *Id*. at 876. While the court in *Krawsky* did not address probable cause or arguable probable cause under the statute, the court stressed that the statute requires the element of intent and physical obstruction or interference that "substantially frustrat[e] or hinder[] the officer in the performance of his duties" *Id*. at 877. The court also differentiated such frustration from "mere interruption." *Id*. "[T]he statute does not apply to ordinary verbal criticism directed at a police officer even while the officer is performing his official duties and does not apply to the mere act of interrupting an officer, even intentionally." *Id*. at 878.

Based on the record before it, and viewing the facts in the light most favorable to Jones, the Court concludes that fact issues exist as to the reasonableness of Jones' arrest. In particular, Jones has pointed to fact issues as to whether Jones was merely interrupting Officer Abla-Reyes or if her actions constituted a "substantial frustration" of his duties. These fact issues will bear on whether Officer Abla-Reyes had arguable probable cause to arrest Jones for obstruction of legal process and will remain for the jury. Should the

jury believe Jones' version of the facts, the jury could find that Officer Abla-Reyes lacked arguable probable cause to arrest. On the other hand, should the jury believe Defendants' version of the facts, then Officer Abla-Reyes will likely prevail on this claim. However, because fact issues remain, the Court concludes that Officer Abla-Reyes is not entitled to qualified immunity on Jones' Fourth Amendment unlawful seizure claim and Defendants' motion for summary judgment is denied as to that claim.

**III.   Excessive Force**

In Count Two, Jones alleges that Officer Abla-Reyes used excessive force when he "struck [her] in the chest, twisted her hands behind her back, handcuffed her, refused to remove the handcuffs, and refused to accommodate her injury and disabilities." (Compl. ¶35.) Defendants argue that Officer Abla-Reyes is entitled to summary judgment because, in light of the circumstances presented, his use of force was reasonable.

The Court evaluates excessive force claims under an objective-reasonableness test. *Graham*, 490 U.S. at 397. In determining whether the use of force is "reasonable" under the Fourth Amendment, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests at stake. *Id*. at 396 (citation omitted). The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See id*. The proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of

the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Moreover, it is clearly established that an arrestee has a right to be free from the use of excessive force. *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002).

The Court's decision turns on the question of whether, taking the facts in the light most favorable to Jones, Jones was subjected to excessive force so as to violate a constitutional right and, if so, whether that right was clearly established at the time. The Court considers each application of force separately. First, Jones argues that Officer Abla-Reyes used excessive force when he "struck" her in the chest. The Court disagrees. When Officer Abla-Reyes first reached the scene, Jones was standing next to Jordan, who was on lying on the ground and bleeding. Officer Abla-Reyes did not know what had transpired, who Jones was, the extent of Jordan's injuries, or whether the scene was secure. Further, there is no dispute that Jones reached her arm out in front of Officer Abla-Reyes when he attempted to reach towards Jordan. Even though Jones claims that she did so to alert him to the fact that Jordan had blood on his shirt, this does not change the fact that the situation was uncertain and the scene was unfolding rapidly. Based on these circumstances, the Court concludes that no reasonable juror could conclude that by using his arm to physically move Jones away from Jordan, Officer Abla-Reyes used objectively unreasonable force, as judged from the perspective of a reasonable officer on the scene. Accordingly, Officer Abla-Reyes is entitled to qualified immunity on Jones'

excessive force claim, insofar as that claim is based on Officer Abla-Reyes use of his arm to move Jones back.

The Court then turns to the question of whether Officer Abla-Reyes used excessive force in effecting her arrest and, in particular, by placing Jones in handcuffs. Jones alleges that Officer Abla-Reyes "twisted her hands behind her back, handcuffed her, refused to remove the handcuffs, and refused to accommodate her injury and disabilities during the incident." (Compl. ¶¶ 40-42.) The Eighth Circuit has stated that "[p]olice officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure." *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). However, here, the Court denied summary judgment on Jones' claim for unlawful seizure against Officer Abla-Reyes. Thus, if a jury were to find in favor of Jones on that claim, they could also conclude that any amount of force used to effect that arrest was likewise unreasonable. The minimal nature of Jones' alleged injury, however, would be reflected in the calculation of damages.

For the reasons discussed above, the Court grants summary judgment on Jones' claim of excessive force insofar as the claim relates to Officer Abla-Reyes' use of his arm to move Jones away from Jordan, and denies summary judgment on Jones' claim of excessive force insofar as it relates to Officer Abla-Reyes' use of force in handcuffing Jones during her detention.

## IV.   First Amendment

In Count One, Jones alleges that Officer Abla-Reyes arrested Jones unlawfully while she exercised her First Amendment rights. (Compl. ¶¶ 31-33.) In particular, Jones alleges that she was exercising her right to free speech when she criticized the Officers and informed them that she would be filing a police misconduct claim, observed their activities, and video-recorded the events. (*Id.* ¶ 32.) Jones further alleges that Officer Abla-Reyes retaliated against her "when he twisted [her] arms, handcuffed her, arrested her, placed her in the squad, and then charged her with a crime based on false and fabricated facts." (*Id.*) Defendants argue that Jones has failed to show such a violation and that Officer Abla-Reyes is entitled to qualified immunity on this claim.

A citizen's right to exercise First Amendment freedoms "without facing retaliation from government officials is clearly established." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted). With respect to the third prong, a plaintiff must show that the retaliatory motive was a "substantial factor" or "but-for cause" of the adverse action. *Peterson v. Kopp*, 754 F.3d at 602 (citing *Baribeau*, 596 F.3d at 481). In other words, the plaintiff must show she was "singled out because of [her] exercise of constitutional

13

rights." *Id*. (quotation omitted). In the case of a retaliatory arrest, there is a fourth prong—lack of probable cause or arguable probable cause. *Id*. (citation omitted).

As discussed above, there are fact issues with respect to the question of whether Officer Abla-Reyes had probable cause or arguable probable cause to arrest Jones. The record demonstrates that Officer Abla-Reyes briefly detained Jones for obstructing legal process. To prevail on her retaliation claim, Jones must present evidence of a causal connection between her detention and the use of force and her protected activities. Here, the record demonstrates that Officer Abla-Reyes did not prohibit Jones from videotaping. Indeed, Jones was allowed to videotape the encounter throughout her handcuffing and detention. In addition, Defendants have pointed to evidence that Officer Abla-Reyes was following department policy that requires persons to be handcuffed when placed in the back of a squad car. Further, Officer Abla-Reyes allowed Jones' feet to remain outside of the squad car. Even if Officer Abla-Reyes was ultimately wrong in believing that he had cause to arrest Jones, there is no evidence that her arrest was retaliatory. Based on the record, no reasonable juror could find that retaliatory animus was a substantial factor or "but-for" cause of Jones' detention. Accordingly, Officer Abla-Reyes is entitled to summary judgment on Jones' First Amendment retaliation claim.

## V.     Failure to Protect

In Count Four, Jones asserts a claim against Officer Barber for a failure to protect. (Compl. ¶¶ 40-42.) In particular, Jones alleges that Officer Barber violated Jones'

"constitutional right to remain free from unreasonable seizures and excessive force . . . by failing to protect [Jones] from Officer Abla-Reyes' excessive use of force." (*Id.* ¶ 41.)

"[An officer] may be liable for an unreasonable seizure under the Fourth Amendment if [she] fails to intervene to prevent the unconstitutional use of excessive force by another official." *Krout v. Goemmer*, 583 F. 3d 557, 565 (8th Cir. 2009). To prevail on such a claim, Jones must demonstrate that Officer Barber: (1) observed or had reason to know of the abuse; and (2) had the opportunity and the means to prevent the abuse from occurring. *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009).

The Court has already determined that Officer Abla-Reyes is entitled to qualified immunity for the alleged use of his arm to push Jones out of the way when he was attempting to assess Jordan's condition. Accordingly, there can be no failure of Officer Barber to prevent that alleged use of excessive force. Moreover, there has been no showing that Officer Barber would have had an opportunity or means to prevent the push. With respect to Jones' claim that Officer Abla-Reyes used excessive force in effecting her arrest, the record demonstrates that when Officer Abla-Reyes handcuffed Jones, Officer Barber was about "two houses" away. (Jones Dep. at 45-47; Barber Dep. at 43.) Further, Officer Barber testified that she did not hear any of Jones and Officer Abla-Reyes' conversation. (Barber Dep. at 43.) Thus, even if a jury were to determine that Officer Abla-Reyes used excessive force when he handcuffed Jones, Jones has not pointed to record evidence that could lead a reasonable juror to conclude that Officer

15

Barber had knowledge of Jones' complaints of harm or the opportunity to intervene. Accordingly, Defendants are entitled to summary judgment on Count Four.

## CONCLUSION

While Jones' claim for unlawful arrest and one part of her excessive force claim survive Defendants' motion for summary judgment, the Court notes that this was a close case. A victory at this stage of the litigation is no guarantee that Jones will ultimately prevail at trial. In fact, should a jury believe the facts as described by Defendants, Jones' remaining claims will almost certainly be decided in Defendants' favor. And even if Jones were to prevail at trial, it appears that her damages would be minimal. The Court believes that settlement would serve the interests of all parties.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. [17]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Counts One and Four are **DISMISSED WITH PREJUDICE**.

      b.      Count Two is **DISMISSED WITH PREJUDICE** insofar as it pertains to Officer Abla-Reyes' use of his arm to move Jones away from Jordan.

Dated:  November 22, 2016                      s/Donovan W. Frank  
                                                        DONOVAN W. FRANK  
                                                        United States District Judge